# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.B., by and through his Parents and Natural Guardians, F.B. and N.V., <br><br> Plaintiffs, <br><br> v. <br><br> PLEASANT VALLEY SCHOOL DISTRICT, <br><br> Defendant. | NO. 3:17-CV-02311 <br><br> (JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before me is a Motion for Attorneys' Fees and Costs (Doc. 24) filed by Plaintiff A.B. On September 16, 2017, a Pennsylvania Special Education Hearing Officer determined, through an administrative proceeding, that Defendant Pleasant Valley School District (the "District") denied A.B. a free, appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act. (*See* Doc. 25-1). A.B. accordingly filed this action in December of 2017 to recover reasonable attorneys' fees and costs from the District, as permitted under those federal statutes. (*See* Docs. 1, 24). The District objects to A.B.'s claimed fees and costs, arguing that the hours billed and hourly rates requested by his counsel are excessive, among other things. (*See* Doc. 30). A.B.'s Motion will be granted, but the fees and costs sought will be reduced to reasonable amounts in light of a few of the District's well-founded objections.

## **I. Background**

A.B. was a student at one of the District's schools. (*See* Doc. 25-1 at 2). A.B.'s parents filed a "due process complaint against the District in October 2016, asserting that it denied [A.B.] a free, appropriate public education (FAPE) under the IDEA and Section 504 of the Rehabilitation Act . . . ." (*Id.*). A hearing was subsequently conducted over four sessions, through which A.B.'s parents "sought to establish that the District failed to address [A.B.'s] many and varied needs throughout the time period in question [July 2013 through

2016], and that a compensatory remedy was warranted." (*Id.*). "The District maintained that its special education program, as offered and implemented, was appropriate for [A.B.] and that no relief was due." (*Id.*).

The Hearing Officer "granted in part and denied in part" the parents' claims. (*Id.*). The Hearing Officer agreed that the District fell short of its IDEA and Section 504 obligations, but only with respect to a portion of the time A.B. attended school in the District—"the second half of the 2014-15 school year through the end of [the] 2015-16 school year." (*Id.* at 33-34). Accordingly, the Hearing Officer awarded A.B. 555.5 hours of compensatory education, (*id.*), worth approximately $30,000 and representing about a third of the compensatory education A.B.'s parents sought through the proceeding. (Doc. 32 at 10-11; Doc. 30 at 17-18; *see* Doc. 25-1 at 3). Moreover, the Hearing Officer only awarded relief based on one legal theory (which may have been addressed *sua sponte*) out of the many A.B. raised. (*See generally* Doc. 25-1; *see also* Doc. 32 at 11; Doc. 30 at 17-18).

A.B., through his parents, subsequently filed this action to recover reasonable attorneys' fees and costs. (Doc. 1). After I denied the District's Motion to Dismiss (*see* Doc. 10), the District answered A.B.'s Complaint (Doc. 12), and A.B. filed the instant Motion for fees and costs (Doc. 24). The District responded with a brief in opposition, challenging the fees and costs requested as excessive, redundant, and vague. (Doc. 30). A.B. then filed a reply. (Doc. 32). Because hourly rates were disputed, I ordered an evidentiary hearing held, *see Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). (Doc. 34). Oral argument on the Motion was also held at that time. (*Id.*).

The Motion has been fully briefed and is now ripe for review.

## II. Legal Standard

Under the IDEA, courts must first determine if the party seeking fees is a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i). A party "prevails" under the IDEA if she achieves relief and if "there is a causal connection between the litigation and the relief from the defendant." *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002).

If that is the case, the court must then determine what a "reasonable" fee is.

"Generally, courts use the 'lodestar' method in evaluating a fee application . . . . Under the lodestar method, and attorney's reasonable hourly rate is multiplied by the number of hours the attorney reasonably spent working on a matter." *D.O. ex rel. M.O. v. Jackson Twp. Bd. of Educ.*, No. CV 17-1581 (TJB), 2019 WL 1923388, at *2 (D.N.J. Apr. 30, 2019) (citations omitted). The prevailing party first "has the burden to prove that its request for attorney's fees is reasonable," by "submit[ting] evidence supporting the hours worked and rates claimed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary," or if they were spent on unsuccessful claims "distinct in all respects from" a party's successful claims. *Id.* (quotation omitted). And the reasonableness of a claimed rate may be shown by pointing to fees charged by lawyers of similar expertise in similarly complex cases in the same community. *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361-62 (3d Cir. 2001); *Rode*, 892 F.2d at 1183. Once the fee petitioner makes a prima facie showing, "the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode*, 892 F.2d at 1183. I may only consider objections the opposing party actually raises—but once raised, I have "a great deal of discretion to adjust the fee award in light of those objections." *Id.*

Once the lodestar is reached, it "is presumed to be the reasonable fee." *Id.* Courts still have discretion to reduce the lodestar, but only if the party seeking a reduction shows that it is necessary. *Id.* One common discretionary reduction is the "results-obtained" reduction, which permits courts to "adjust the lodestar downward if [it] is not reasonable in light of the results obtained." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-37 (1983)). Just what degree of success has been achieved, and whether the lodestar is unreasonable in light of that success, are determinations committed to the district court's discretion. *Hensley*, 461 U.S. at 436-37.

### III. Discussion

**A.   Reasonable Hours**

As A.B. is unquestionably a "prevailing party," having won compensatory education, *see Heather D. v. Northampton Area Sch. Dist.*, 511 F. Supp. 2d 549, 562 (E.D. Pa. 2007), I begin with the lodestar calculation. A.B.'s counsel, McAndrews Law Offices ("MLO"), submits that it has reasonably expended 409.87 hours on this matter, split between several attorneys and a few paralegals. (Doc. 32-1). The District points to a number of hours billed that it contends are vague, excessive, or redundant, so I will address those objections in turn.[1]

    1. Client calls

The District first argues that MLO's contact with its clients was excessive, and that none of the billing entries provide sufficient detail for determining whether the contact was warranted. (Doc. 30 at 25-26). According to the District, there are over 100 entries for matters such as "telephone communicate with client" and "preparation of correspondence with client." (*Id.* at 25). A.B. counters that this case has been ongoing for about four years, and that 100 calls over four years averages to a reasonable two calls per month. (Doc. 32 at 23). And entries like "client communication" are not vague, according to A.B., because it provides enough information for the Court and the parties to determine whether the hours billed are reasonable. (*Id.* at 23-24).

I agree with A.B. There may be other reasons why attorney communications with a

---

[1] Counsel's submissions toe the line of inadequacy. While MLO provides its itemized bill, (*see* Doc. 32-1), the bill does not total the number of hours expended per attorney or paralegal. And counsel for the District, in making specific objections, totaled the dollar amounts overbilled for each challenged category of task (based on the hourly rates MLO requests) rather than the number of hours overbilled per attorney or paralegal. This has made determining the number of hours reasonably expended on this matter that much more tedious. But I cannot say, as a matter of law, counsel's submissions are insufficient. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1189-90 (3d Cir. 1990) (declining to adopt the Eleventh Circuit's requirement that a fee petition include summaries grouping entries by activity).

4

client should not be billed, but I find the District's proffered reasons unpersuasive. Two calls each month does not seem excessive to me, given an attorney's ethical duty to communicate with her client, 204 Pa. Code Rule 1.4, and the necessity of A.B.'s parents' involvement in this case. Nor are the billing entries improperly vague for simply listing "client communication." MLO does not need "to mention the specific substance of a communication" in its billing records for a court to assess the reasonableness of an entry. *Sch. Dist of Phila. v. Deborah A.*, No. CIV.A. 08-2924, 2011 WL 2681234, at *3 (E.D. Pa. July 8, 2011); *see Keenan v. City of Phila.*, 983 F.2d 459, 473 (3d Cir. 1992); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (billing entries need only contain enough detail for a court to "determine if the hours claimed are unreasonable for the work performed"). In sum, MLO has provided enough information for me to determine that the hours it billed for client communication are reasonable, and the District has not provided a sufficient justification for deeming those hours excessive or vague.

### 2. Vague entries

Next, the District challenges a number of entries as vague: for instances, entries for "Preparation of correspondence to counsel," "Review of records," "Review of correspondence from counsel," "Telephone communication" to and from "counsel," and "Meeting with counsel." (Doc. 30 at 26-27). The Third Circuit has repeatedly explained, however, that a fee petition need only include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys . . . ." *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). "It is not necessary to know . . . the precise activity to which each hour was devoted . . . ." *Id.* Accordingly, courts in the Third Circuit have held that simple entries such as "research," "review," and "prepare" are sufficiently specific, so long as they explain who performed those activities and for how long. *See Walker v. Gruver*, No. 1:11-CV-1223, 2013 WL 5947623, at *15 (M.D. Pa. Nov. 5, 2013); *Garner v. Meoli*, No. CIV. A. 96-1351, 1998 WL 560377, at *2 (E.D. Pa. Aug. 31, 1998). I will therefore not deduct hours

for the entries the District broadly challenges as vague.

### 3. Entries regarding Hearing Officer Culleton

Any entries regarding Hearing Officer Culleton are "egregiously inappropriate," in the District's view, because "the Hearing Officer in this matter was Hearing Officer Skidmore." (Doc. 30 at 27). Although A.B. responds that Culleton was, in fact, involved in this matter and some correspondence between MLO and Culleton was necessary, (Doc. 32 at 25), I need not resolve this factual dispute. The District has not submitted "an affidavit setting forth" this "factual contention[]" and has accordingly not met its burden in challenging all entries regarding Culleton. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 715 n.1, 720 (3d Cir. 1989).

### 4. Excessive and redundant internal communications between staff

The District also objects generally to internal communications between counsel and support staff. (*See* Doc. 30 at 27-28). The District cites *Defurio v. Elizabeth Forward Sch. Dist.*, No. CIV.A. 05-1227, 2008 WL 2518139, at *4 (W.D. Pa. June 19, 2008) for the proposition that hours billed for such communications are not recoverable. (*Id.*). But the court in *Defurio* "acknowledge[d] the necessity of discussing legal issues and case strategies with several different counsel," only finding that "certain conferences were excessive." 2008 WL 2518139, at *4. The general rule, as I have previously noted, is that "internal discussions" between counsel and "her legal staff regarding the case" can be "properly charged to one's client, and are therefore recoverable." *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514, 537 (M.D. Pa. 2016). So I do not find the District's blanket objection to all internal communications regarding A.B.'s case persuasive.

The District also specifically objects to certain entries as vague, excessive, and redundant because they are labeled "Intraoffice communication" and multiple attorneys or paralegals billed for those hours. (Doc. 30 at 28). However, it is clear from accompanying entries that those communications related to specific case-related matters (such as "Mediation" and "Settlement Agreement"). (*See, e.g.*, Doc. 32-1 at 61, 63-64). And one would expect multiple attorneys or paralegals to bill for the conferences in which they

6

necessarily took part. It is not "inherently unreasonable to have more than one attorney involved in such matters as meetings and telephone conferences . . . ." *United States ex rel. Doe v. Pa. Blue Shield*, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999). Thus, I will not deduct any hours for internal communications between staff.

     5. <u>Multiple attorneys or paralegals billing for the same task</u>

The District specifically objects to other occasions where multiple attorneys or paralegals billed for work on the same tasks. (Doc. 30 at 28-29). The District submits that it was unreasonable for multiple attorneys and paralegals to bill for preparing and reviewing filings in this case (including the Complaint, the Answer, two brief Orders, and the District's Motion to Dismiss). (*Id.*). A.B. responds that it was not unreasonable for multiple attorneys to bill for same task, because they performed different roles within that task (e.g., supervising or editing as opposed to drafting). (Doc. 32 at 20-21). Such time billed, A.B. argues, is not "unreasonably duplicative." (*Id.* at 21).

I agree with Defendants that some hours expended by attorney McAndrews for reviewing and preparing filings in this case were excessive. As A.B. admits, attorneys Hulse and Gehring were the lead attorneys on this matter. (Doc. 32 at 25). I fail to see how it was reasonable for the name partner of the firm to bill for the same activities a senior and junior attorney (along with a paralegal) were undertaking. (*See* Doc. 32-1 at 43-47, 48, 58). And neither "editing" nor the "supervisory" nature of attorney McAndrews's work is reflected in his billing entries. I will therefore deduct the 1.52 hours attorney McAndrews billed for these tasks. *Cf., e.g.*, *Lanni v. New Jersey*, 259 F.3d 146, 151 (3d Cir. 2001) ("Given [the attorney's] professed expertise in this area, it would have not been unreasonable to expect her to conduct the trial alone or with the help of an associate."). I will not, however, deduct any hours billed by attorneys Hulse or Gehring, or paralegal Hardy, as excessive or duplicative; it was reasonable, at least in a moderately complex case such as this one, for a senior and junior attorney along with a paralegal to work hand-in-hand. *See id.*

     6. <u>Attorneys performing paralegal work</u>

The District next challenges certain hours billed by attorneys performing what the

7

District considers "paralegal work." (Doc. 30 at 29-31). This work includes "Updating case status," "Closure of file," review of an entry of appearance and other case filings, preparation of a motion to extend the mediation deadline, and preparing an exhibit book. (*Id.*). A.B. counters that even if these are tasks that paralegals can perform, the District has not explained why the attorneys working on the case should not have performed them. (Doc. 32 at 27). Reviewing filings, preparing motions, preparing exhibits, and managing case files are all tasks reasonably performed by attorneys, A.B. says. (*Id.* at 27-28).

I agree with A.B. Preparing and reviewing legal documents are certainly tasks that attorneys may reasonably perform. *See, e.g.*, *Jackson v. Allied Interstate, LLC*, No. 2:12CV1144, 2013 WL 3990875, at *7 (W.D. Pa. Aug. 5, 2013) (noting that counsel is obligated to "be familiar with" and "understand" orders filed in a case); *Warner v. Twp. of S. Harrison*, No. CIV. 09-6095 JBS/JS, 2013 WL 3283945, at *13 (D.N.J. June 27, 2013) ("The Court cannot conclude as a matter of law that a paralegal should prepare a subpoena. Subpoenas are court documents that have legal force and effect. Therefore, it is proper for an attorney to prepare it . . . ."). The same goes for trial preparation and case management, the other sorts of tasks the District challenges as improperly performed by attorneys. *See Campbell v. District of Columbia*, 202 F. Supp. 3d 121, 132 (D.D.C. 2016) ("Reasonable time spent preparing for trial (including time spent preparing exhibits like Dr. Campbell's slides) is compensable under § 1988."); *Lopez v. Astrue*, No. 1:10CV1012 AWI GSA, 2012 WL 2052146, at *2 (E.D. Cal. June 6, 2012), *report and recommendation adopted*, No. 1:10-CV-01012 OWW, 2012 WL 2995486 (E.D. Cal. July 23, 2012) (finding ".3 hours for case management duties" billed by an attorney reasonable). I will therefore not deduct any hours for tasks that the District contends should have been performed by paralegals.

### 7. Excessive billing for tasks within MLO's "realm of expertise"

Because MLO "hold themselves out as having extensive experience in this area of law and expect to be paid at a rate of almost $500 per hour," the District argues MLO improperly billed for "Review of electronic exhibit pilot" and "Review of Due Process Hearing

8

Preparation Guidelines." (Doc. 30 at 31). As A.B. notes, the District does not cite to any authority in support of its argument. (Doc. 32 at 28). Regardless, I do not see how billing minimal amounts of time (resulting in overbilling of $227.50, by the District's estimation) to these specific tasks was unreasonable, even considering MLO's expertise; it is not inherently unreasonable for attorneys to bill for limited time spent reviewing and researching matters that fall within their legal speciality.

    8. Block-billed entries

The District contends that no hours are reasonably expended if they are block-billed. (Doc. 30 at 31-32). This Court has previously recognized, however, that "the more appropriate approach" is to "look at the entire block, comparing the listed activities and the time spent, and determin[e] whether the hours reasonably correlate to all of the activities performed." *United States ex rel. Doe v. Pa. Blue Shield*, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999); *see Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) ("It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."). Since the District's argument goes no further, I will not either. *See Rode*, 892 F.2d at 1183.

    9. Double-billing for travel

Finally, the District argues MLO double-billed for travel because MLO "billed for travel time under counsel fees and then also filed for mileage under costs." (Doc. 30 at 32). A.B. simply responds that an "attorney's professional time is different from out-of-pocket costs such as mileage, and charging for both is not even conceivably double billing.'" (Doc. 32 at 29). I agree with the District—A.B. cannot recover both fees for travel and costs for mileage. Normally, "the prevailing practice in a given community" governs whether "reasonable travel time" is "billed at cost *or* at market rates." *Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002) (emphasis added) (citation omitted); *cf., e.g.*, *Stadler v. Abrams*, No. CV 13-2741 (RBK/AMD), 2018 WL 3617967, at *5 (D.N.J. July 30, 2018) (noting the trend in New Jersey is to reimburse travel time at half an attorney's normal hourly rate). The District only objects to the costs billed for travel, though, in the amount of

9

$150.44 (far less than what MLO billed hourly for travel), and does not challenge the hourly fee charged for travel as excessive. (Doc. 30 at 32). In light of this limited objection, it is not necessary to determine what the prevailing practice in this community is. *See Rode*, 892 F.2d at 1183. I will disallow costs for mileage in the amount of $150.44.

10. Summary[2]

Based on my review of MLO's bill, my calculation of the numbers of hours billed per attorney and paralegal, and the reductions granted above for unreasonable hours billed, I find the following hours expended to be reasonable:

| Attorney | Hours |
|---|---|
| McAndrews | 2.68 |
| Gehring | 83.71 |
| Konkler-Goldsmith | 4.56 |
| Connolly | 1.9 |
| Ryan | 1.27 |
| Hulse | 244.13 |
| **Paralegal** | |
| Hardy | 13.37 |
| Paul | 45.6 |
| Butler | 11.13 |

**B.    Reasonable Hourly Rate**

The next issue is determining reasonable hourly rates for each attorney and paralegal. A.B. claims the following hourly rates are reasonable:

---

[2] I note that to the extent the District argues more hours should be reduced here for partial success or for spending excessive time on certain matters, the lodestar reduction discussed in Section III.C *infra* adequately captures those hours.

| Attorney | Hourly Rate |
|---|---|
| McAndrews | $525 |
| Gehring | $525 |
| Konkler-Goldsmith | $495 |
| Connolly | $495 |
| Ryan | $495 |
| Hulse | $455 |
| **Paralegal** | |
| Hardy | $195 |
| Paul | $175 |
| Butler | $165 |

However, A.B. has failed to make a prima facie showing that these requested rates reflect the prevailing market rates in Northeastern Pennsylvania.[3] None of MLO's submissions adduced what the prevailing market rates in this community are. As an initial matter, affidavits and testimony from MLO attorneys, by themselves, are insufficient to make a prima facie showing. MLO bears the burden "of establishing by way of satisfactory evidence, '*in addition to* [their] own affidavits,' that the requested hourly rates" reflect the

---

[3] At the hearing, A.B.'s counsel argued for the first time that the relevant market is Eastern Pennsylvania. In other words, MLO believes it should be paid an out-of-market rate based on its special expertise or local counsel's unwillingness to handle A.B.'s case. But the requisite showing has not been made. "The record is devoid of any evidence that" A.B., in vain, "conducted a significant search for counsel with the ability to handle this case." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). Indeed, one of MLO's own submissions indicates that an attorney with similar experience to attorney Hulse practices special education law in Northeastern Pennsylvania. (*See* Doc. 25-9). Nor did MLO provide any evidence that local counsel was unwilling to handle this case. *Cf. Interfaith Cmty. Org.*, 426 F.3d at 706-07. That MLO advances expert costs or otherwise charges less up front than other firms does not mean local counsel was unwilling to take A.B.'s case. And attorney Hulse, in fact, lives in Lackawanna County and "manages MLO's Scranton office." (Doc. 25-4 at ¶ 13). I cannot see how MLO can claim out-of-market rates when the lead attorney on A.B.'s case admittedly lives and practices within the market.

11

prevailing market rates in the community. *Washington v. Phila. Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (emphasis added) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). So that burden cannot be satisfied by self-serving affidavits and testimony alone.

That leaves MLO's submissions from other attorneys (Docs. 25-7; 25-8; 25-9), opinions and orders from other cases involving MLO (Docs. 25-6; 25-10; 25-11; 25-12), and the 2017 Community Legal Services of Philadelphia fee schedule (the "CLS" fee schedule) (Doc. 25-3). Not one of these explains what the prevailing market rates here are, though. First, the CLS fee schedule reflects "Philadelphia law firm market survey data," (Doc. 25-3), which does not bear on the prevailing market rates in Northeastern Pennsylvania, the locus of the litigation. *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 509 (M.D. Pa. 2016). Second, the opinions and orders from other cases MLO submits to support its rates are inapplicable, because they come from the Eastern District of Pennsylvania or the District of Delaware, and do not analyze whether the hourly rates claimed reflected prevailing market rates. (*See* Docs. 25-6; 25-10; 25-11; 25-12). And third, the declaration and verifications from other attorneys which MLO submitted fall short of stating the prevailing market rate. All three recite that MLO's hourly rates are reasonable and competitive or consistent with market rates. (Doc. 25-7 at 3-4; Doc. 25-8 at 1; Doc. 25-9 at 1). Reasonableness is not the standard, though, and claims that rates are "consistent" or "competitive" with the market only "come close to stating the prevailing market rate." *Borrell*, 207 F. Supp. 3d at 510. Without some evidence beyond that—for instance, revealing how much the declaring attorney charges, *cf. J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, No. 3:07CV585, 2014 WL 1321116, at *7 (M.D. Pa. Mar. 31, 2014), or submitting evidence that the rate claimed has actually been awarded in this area, *see Borrell*, 207 F. Supp. 3d at 510—counsel's submissions are insufficient. *See, e.g.*, *Mulero v. Walsh*, No. 3:15-CV-1406, 2018 WL 1084235, at *13 (M.D. Pa. Feb. 28, 2018). To top it off, one verification relates only to the rates charged in "southeastern and central Pennsylvania." (Doc. 25-8 at 1). And another verification, while addressing the "Northeastern and Central Pennsylvania" market,

(Doc. 25-9), is appropriately contested by the District's submissions (*see* Docs. 30-1 and 30-2) which note that the verifying attorney (who has about the same experience as attorney Hulse) was awarded a significantly lower rate in a 2017 case from this District. *See A.P. v. Shamokin Area Sch. Dist.*, No. 4:16-CV-1153, 2017 WL 4418289, at *8-9 (M.D. Pa. Oct. 5, 2017) (noting a prevailing market range of $150 to $325 per hour in the Williamsport area, and awarding a rate of $170 per hour).

For these reasons, A.B. has failed to make a prima facie showing of the prevailing market rate. I therefore have the discretion to determine what hourly rate is appropriate. *See Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012).[4]

I find based on the parties' submissions and the evidence adduced at the hearing that the rates MLO claims exceed the prevailing market rates here for similar legal services performed by professionals of similar skill and experience. Rates of around $500 per hour per attorney—and nearly $200 per hour for a paralegal—are far above the hourly rates set in comparable cases from this District. *See, e.g.*, *Katona v. Asure*, No. 1:11-CV-1817, 2019 WL 636979, at *3 (M.D. Pa. Feb. 14, 2019) (finding rates of $300 and $200 per hour reasonable for experienced civil rights counsel—one of whom was formerly a judge); *Mulero v. Walsh*, No. 3:15-CV-1406, 2018 WL 1084235, at *14 (M.D. Pa. Feb. 28, 2018) (reducing requested rate of $450 per hour to $375 per hour for counsel with over 20 years' experience litigating civil rights claims in the Middle District); *Moffitt v. Tunkhannock Area Sch. Dist.*, No. CV 3:13-1519, 2017 WL 319154, at *4-7 (M.D. Pa. Jan. 20, 2017) (awarding rates of $250

---

[4] Even if A.B. had made a prima facie showing, the District sufficiently challenged the claimed hourly rates with affidavits pointing to contemporaneous fee awards in apposite cases—including one case which, as noted, called the accuracy of a verification into question. *Cf., e.g.*, *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 97 n.4 (3d Cir. 2006) (hourly rate not properly contested where the party opposing the fee petition merely stated the rates requested were excessive and cited to fee awards in stale, inapposite cases). I would thus still have the discretion to adjust hourly rates downward. *Cf. Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 139 (3d Cir. 2007).

and $150 per hour for experienced attorneys, and noting that "[r]ecent awards for paralegal fees in this district have ranged from $95.00 to $170.00 per hour"). A rate range of between $100 and $375 per hour for attorneys, and $95 to $170 per hour for paralegals, is more accurate for Northeastern Pennsylvania. *See Moffit*, 2017 WL 319154, at *4-7.

I will begin with paralegal rates. Although the CLS fee schedule reflects Philadelphia rates, I find it a useful starting point. The top hourly rate for a paralegal under the CLS fee schedule is $165 per hour, and given paralegal Hardy's experience and senior position at MLO, I find that top rate reasonable for this area (if rather high). *See Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2016 WL 3522964, at *3 (M.D. Pa. June 28, 2016) (awarding $170 per hour for a paralegal). The top rate on the CLS schedule for non-senior and non-supervisory paralegals is $140, and I find that a reasonable rate for paralegal Paul, given her experience. A rate of $130 for paralegal Butler falls within the CLS schedule and also seems reasonable given her experience in relation to paralegals Paul and Hardy. Additionally, these rates fall within or even below the range the District claims is reasonable for legal services in this area. (*See, e.g.*, Doc. 30-1).

That brings me to the reasonable rates for MLO's attorneys. I find a top rate of $375 per hour to be reasonable based on comparable cases from this District (namely, *Mulero* and *Moffitt)*, the level of experience of attorneys McAndrews and Gehring, and the testimony offered at the hearing. I also find rates of $325 per hour for attorneys Konkler-Goldsmith, Connolly, and Ryan, and a rate of $300 per hour for attorney Hulse, to be reasonable based on the same evidence—comparable cases, experience, and testimony.

I will accordingly reduce MLO's claimed hourly rates as noted above. Taking into account the reduced hourly rates and all reductions in hours, I calculate the lodestar to be $118,180.70:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| McAndrews | $375 | 2.68 | $1,005 |
| Gehring | $375 | 83.71 | $31,387.50 |
| Konkler-Goldsmith | $325 | 4.56 | $1,482 |
| Connolly | $325 | 1.9 | $617.50 |
| Ryan | $325 | 1.27 | $412.75 |
| Hulse | $300 | 244.13 | $73,239 |
| **Paralegal** | | | |
| Hardy | $165 | 13.37 | $2,206.05 |
| Paul | $140 | 45.6 | $6,384 |
| Butler | $130 | 11.13 | $1,446.90 |
| | | **Lodestar:** | **$118,180.70** |

## C.   Degree of Success

As discussed before, the lodestar of $118,180.70 is presumed to be a reasonable fee. The District argues, though, that the lodestar ought to be reduced to reflect A.B.'s limited success. As the District sees it, A.B. hardly prevailed. A.B. "sought full days of compensatory education from July of 2013 [through] the 2015-2016 school years based on . . . nine allegations of denial of FAPE." (Doc. 30 at 17). But A.B. was awarded a bit less than a third of the compensatory education initially sought, and on a theory that the Hearing Officer may have raised *sua sponte*. (*Id.* at 17-18). Thus, the District suggests that some reduction is warranted—even up to 100%—for limited success. (*See id.*). A.B. responds that all claims were based on the District's denial of FAPE through the same time period under IDEA and Section 504 of the Rehabilitation Act, so it would be impossible to sort out successful claims from unsuccessful ones. (Doc. 32 at 11-12). The better measure of success, A.B. posits, is "the *highly* significant award—nearly $30,000—of compensatory education." (*Id.* at 13 (emphasis in original)). A.B. accordingly contends that no results-obtained reduction is warranted, given this success.

The reasonable answer lies somewhere between the parties' positions. There is no

15

doubt that, contrary to A.B.'s contention, A.B. did not achieve complete success. The Hearing Officer granted only partial relief representing about a third of the compensatory education sought from the District. Even though important civil rights were vindicated, the differential between the relief sought and the relief granted indicates that MLO did not achieve the excellent results described in *Hensley* that would preclude a degree of success reduction. *See Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983). On the other hand, A.B. was not unsuccessful to the degree the District suggests. A.B. still obtained relief due to MLO's efforts, even if those efforts failed to reveal the winning legal theory and resulted in wheels spun on unsuccessful ones.

Considering the intertwined nature of A.B.'s claims, the significant differential between the relief requested and the relief received, and MLO's lack of success on nearly all (if not all) the theories it submitted to the Hearing Officer, I find a forty-five percent (45%) reduction of the lodestar is appropriate. *See Mary Courtney T. v. Sch. Dist. of Phila.*, No. CIV.A. 06-2278, 2009 WL 185426, at *9 (E.D. Pa. Jan. 22, 2009) (reducing lodestar by 45% to reflect partial success where plaintiffs (represented by MLO) sought relief under the IDEA for a fourteen month period, but were only awarded relief as to about four months—*i.e.*, approximately one-third of the amount sought). The lodestar of $118,180.70 is accordingly reduced by forty-five percent (45%) to $64,999.39.

The District still finds this amount—indeed, any amount greater than $30,000—to be excessive considering the circumstances of the case. (Doc. 30 at 34). The District makes much out of that fact that "it is inconceivable that [plaintiff's counsel] would submit a bill for such [high] fees to a parent and her son"—and since it is standing in the A.B.'s shoes, such fees should not be borne by the District, either. (*Id.* at 16). But that inconceivability is precisely why Congress includes fee-shifting provisions in the laws it enacts. The purpose of fee-shifting is "to enable private parties to obtain legal help in seeking redress of injuries resulting from the actual or threatened violation of specific federal laws." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). That purpose is only satisfied if plaintiffs "find it possible to engage a lawyer based on the statutory

assurance that he will be paid a 'reasonable fee.'" *Id.* A "reasonable fee," therefore, does not mean a fee that an IDEA plaintiff would pay her lawyer if the IDEA's fee-shifting provision did not exist, as the District argues. The whole point of fee-shifting "is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery," thereby "assuring that civil rights claims of modest cash value can attract competent counsel." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011). I will not, therefore, reduce the lodestar on this basis, or any other basis that the District raises in passing. (*See* Doc. 30 at 17-22).[5]

**D.     Costs**

That leaves the award of costs. A.B. requests an award of $1,463.11 in costs, representing $745 in expert costs, the $400 complaint filing fee, about $150 in mileage, and scattered costs for photocopies and postage. (Doc. 32-1 at 76-77). The District objects to double-billing for travel, and as discussed above, A.B. cannot recover both fees and costs for travel. I will therefore reduce the costs claimed in the amount of $150.44.

The District's remaining objection concerns A.B.'s expert. As the District sees it, the IDEA does not allow plaintiffs to recover expert costs. (Doc. 30 at 33 (citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006))). A.B. responds that the Hearing Officer decided in A.B.'s favor on both IDEA and Section 504 grounds, and that expert fees

---

[5]     The District, throughout its briefing, relies heavily on the court's decision in *A.P. v. Shamokin Area Sch. Dist.*, No. 4:16-CV-1153, 2017 WL 4418289 (M.D. Pa. Oct. 5, 2017) in arguing the lodestar is excessive. Respectfully, I do not find that decision persuasive. The two pillars of *A.P.*'s reasoning are that (1) the lodestar *must* be reduced to reflect the percentage of issues the plaintiff prevails on, and (2) what defense counsel charges speaks to what similarly experienced plaintiff's counsel ought to charge. *Id.* at *8-9. *Hensley* itself rejects the first, 461 U.S. at 435 n.11, as does the Third Circuit, *see McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 151 (3d Cir. 2009) ("[M]athematically deducting fees proportional to a plaintiff's losing claims is 'too simplistic and unrealistic." (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 898 F.2d 357, 363 (3d Cir. 1990))). And courts have routinely questioned the wisdom of the second. *See, e.g.*, *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 384 (5th Cir. 2011); *Souryavong v. Lackawanna Cty.*, 159 F. Supp. 3d 514, 543-44 (M.D. Pa. 2016).

17

are recoverable as costs in Section 504 actions. (Doc. 32 at 30). I agree with A.B. that expert costs are recoverable here. The Hearing Officer concluded the District denied A.B. FAPE under both the IDEA and Section 504 of the Rehabilitation Act. (*See* Doc. 25-1 at 21, 33-34). Under these circumstances, courts have held expert costs may be recovered under Section 504. *See Elizabeth S. v. Sch. Dist. of Phila.*, No. CIV.A. 11-1570, 2012 WL 2469547, at *5 (E.D. Pa. June 28, 2012); *Neena S. ex rel. Robert S. v. Sch. Dist. of Phila.*, No. CIV.A. 05-5404, 2009 WL 2245066, at *11 (E.D. Pa. July 27, 2009). *But see Laura P. v. Haverford Sch. Dist.*, No. CIV. A. 07-5395, 2009 WL 1651286, at *10 & n.12 (E.D. Pa. June 12, 2009). Thus, I will not deduct any expert costs.

I will therefore award A.B. a total of $1,312.67 in costs.

### IV. Conclusion

For the reasons stated above, A.B.'s motion will be granted in part. Fees will be awarded in the amount of $64,999.39, and costs will be awarded in the amount of $1,312.67.

An appropriate order follows.

June 28, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge